Jeff Carruth
State Bar No. 24001846
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
3030 Matlock Rd., Suite 201
Arlington, Texas 76015
Phone: (817) 795-5046
Facsimile: (866) 666-5322
jcarruth@wkpz.com

**ATTORNEYS FOR GEORGE M. FOSHEE, JR.**

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| D. ANDREW SLOWE, | § | CASE NO. 10-31879-HDH-13 |
| KARLA M. MARQUEZ | § | (CHAPTER 13) |
| Debtors | § | |
| | § | **PRELIMINARY HEARING SET:** |
| | § | **May 10, 2011, 11:00 a.m.** |

**DECLARATION OF GEORGE M. FOSHEE, JR. IN SUPPORT OF
MOTION OF GEORGE M. FOSHEE, JR. FOR RELIEF FROM AUTOMATIC STAY
REGARDING NON-HOMESTEAD REAL PROPERTY AND RELATED RELIEF**

Pursuant to 28 U.S.C. § 1746, George M. Foshee, Jr., hereby declares the following under penalty of perjury of the laws of the United States that the following statements are true and correct.

1. My name is George M. Foshee, Jr. ("Foshee" or the "Lender"). I am more than twenty-one (21) years of age and am competent and authorized to make this affidavit. I have personal knowledge of the facts set forth herein and they are true and correct.

2. By and through counsel I have filed the *Motion of George M. Foshee, Jr. for Relief From Automatic Stay Regarding Non-Homestead Real Property and Related Relief* (the "Motion") and seeking, pursuant to 11 U.S.C. § 362(d), Rule 4001(a)(1) of the Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rule 4001, an Order terminating the automatic stay to permit me to take all steps necessary to obtain possession of and enforce my remedies in that certain real property commonly referred to as 2909 Reagan St, Dallas, Texas 75219 and further referenced and described in **Exhibit A** (the "Property"), and to foreclose upon the Property and exercise any and all remedies available under applicable law to enforce the Note and Deed of Trust (as defined below).

3. On or about September 25, 2008, D. Andrew Slowe (the "Debtor") executed a *Promissory Note* (the "Note") in the original principal amount of $250,000.00 in order to purchase the Property. A true and correct copy of the Note is attached hereto as **Exhibit B** and incorporated by reference herein.

**DECLARATION OF GEORGE M. FOSHEE, JR. — Page 1 of 3**

4. The Note matured on September 10, 2010 and is now fully due and payable.

5. As of the Petition Date, the Debtor owed the Lender a total balance of not less than $250,000.00, plus interest, costs, attorneys' fees, and all other charges allowed pursuant to the Note (the "Indebtedness"). In other words, the entire principal balance of the Note is due.

6. The Debtor has made interest only payments since the execution of the Note as set forth in **Exhibit C**, attached hereto and incorporated by reference herein. At no time has the balance reduced below $250,000.

7. To secure the Debtor's purchase of the Property and repayment of the Indebtedness, the Debtor executed and delivered to Foshee on September 25, 2008 a *Deed of Trust* (the "Deed of Trust") and granted to Foshee a security interest and liens in, to, and against the Property. Foshee holds a valid, subsisting, and properly perfected security interest in, to, and against the Property to secure payment of the Indebtedness. A true and correct copy of the Deed of Trust is attached hereto as **Exhibit D** and incorporated by reference herein.

8. It is unknown whether Debtor is maintaining insurance on the Property sufficient to cover its value, with Foshee noted as a loss payee on the insurance.

9. To my knowledge, the Debtor does not reside in the Property, and the Debtor does not use or claim the Property as his homestead.

10. In my opinion, the Debtor has no equity, or no realizable equity, in the Property. According to the Dallas County Appraisal District, the appraised value of the Property is $280,000. A copy of the DCAD Appraisal Information that I obtained from the DCAD web site is attached hereto as **Exhibit E**.

11. The Debtor's Plan provided that the Debtor would continue to perform the Debtor's obligations under the Note directly to me. Consequently, the Property is outside of the reach of the Chapter 13 trustee, if the Property conceivably were to have any realizable equity.

12. I am 80 years old, and my wife is 76 years old. We require the proceeds of the Property to assist with our own living needs.

FUTHER DECLARANT SAYEHT NOT

Dated: May 3, 2011

SEE SIGNATURE BELOW

George M. Foshee, Jr.

**DECLARATION OF GEORGE M. FOSHEE, JR. — Page 2 of 3**

4.     The Note matured on September 10, 2010 and is now fully due and payable.

5.     As of the Petition Date, the Debtor owed the Lender a total balance of not less than $250,000.00, plus interest, costs, attorneys' fees, and all other charges allowed pursuant to the Note (the "Indebtedness"). In other words, the entire principal balance of the Note is due.

6.     The Debtor has made interest only payments since the execution of the Note as set forth in **Exhibit C**, attached hereto and incorporated by reference herein. At no time has the balance reduced below $250,000.

7.     To secure the Debtor's purchase of the Property and repayment of the Indebtedness, the Debtor executed and delivered to Foshee on September 25, 2008 a *Deed of Trust* (the "Deed of Trust") and granted to Foshee a security interest and liens in, to, and against the Property. Foshee holds a valid, subsisting, and properly perfected security interest in, to, and against the Property to secure payment of the Indebtedness. A true and correct copy of the Deed of Trust is attached hereto as **Exhibit D** and incorporated by reference herein.

8.     It is unknown whether Debtor is maintaining insurance on the Property sufficient to cover its value, with Foshee noted as a loss payee on the insurance.

9.     To my knowledge, the Debtor does not reside in the Property, and the Debtor does not use or claim the Property as his homestead.

10.    In my opinion, the Debtor has no equity, or no realizable equity, in the Property. According to the Dallas County Appraisal District, the appraised value of the Property is $280,000. A copy of the DCAD Appraisal Information that I obtained from the DCAD web site is attached hereto as **Exhibit E**.

11.    The Debtor's Plan provided that the Debtor would continue to perform the Debtor's obligations under the Note directly to me. Consequently, the Property is outside of the reach of the Chapter 13 trustee, if the Property conceivably were to have any realizable equity.

12.    I am 80 years old, and my wife is 76 years old. We require the proceeds of the Property to assist with our own living needs.

FUTHER DECLARANT SAYEHT NOT

Dated: May 3, 2011

*George M. Foshee, Jr.*
George M. Foshee, Jr.

---

DECLARATION OF GEORGE M. FOSHEE, JR. — Page 2 of 3

## CERTIFICATE OF SERVICE

On May 3, 2011, I hereby certify that a true and correct copy of the foregoing Motion for Relief from Automatic Stay has been served via electronic mail and/or by first class regular mail, postage prepaid, to Debtor, Debtor's counsel, the Chapter 13 Trustee, and the United States Trustee as listed below and the parties listed in the attached service list. Additional notice was provided to registered ECF users appearing in this case as set forth below:

| DEBTOR: | DEBTOR COUNSEL: |
|---|---|
| David Andrew Slowe<br>25 Highland Park Village<br>No. 100-317<br>Dallas, TX 75205 | Len L. Nary<br>3010 LBJ Freeway, Suite 1200<br>Dallas, TX 75234 |
| JOINT DEBTOR: | JOINT DEBTOR COUNSEL: |
| Karla M. Marquez<br>25 Highland Park Village<br>No. 100-317<br>Dallas, TX 75205 | Len L. Nary<br>3010 LBJ Freeway, Suite 1200<br>Dallas, TX 75234 |
| CHAPTER 13 TRUSTEE: | U.S. TRUSTEE: |
| Thomas Powers<br>125 E. John Carpenter Frwy., Suite 1100<br>Irving, TX 75062-2288 | UST U.S. Trustee<br>1100 Commerce Street, Room 976<br>Dallas, TX 75242-1496 |

/s/ Jeff Carruth
Jeff Carruth

**EXHIBIT A**

Being part of Lot 2, Block 3/1328, of Mellersh's Oak Lawn Addition, an Addition to the City of Dallas, Dallas County, Texas, according to the map or plat thereof recorded in Volume 124, Page 13, of the Map Records of Dallas County, Texas, and being more particularly described as follows:

BEGINNING at a ½ iron pipe found in the Northwest line of Reagan Street, a 50' wide public right-of-way, at the South corner of said Lot 2, same being in the East corner of Lot 1 of said Block;

THENCE North 48 degrees, 29 minutes, 59 seconds West, a distance of 145.30 feet to a ½ inch iron rod found in the Southeast line of a 10' wide public alley right-of-way, at the West corner of said Lot 2, same being the North corner of Lot 1, from which a ½ iron pipe found for reference bears South 45 degrees, 41 minutes, 46 seconds East, a distance of 0.58 feet;

THENCE North 45 degrees, 14 minutes, 48 seconds East, along the Southeast line of said alley, as shown on 24.75 feet to a ½ inch iron rod with a yellow plastic cap stamped "RPLS 5310" set for corner;

THENCE South 46 degrees, 39 minutes, 16 seconds East, a distance of 145.30 feet to a ½ inch iron rod with a yellow plastic cap stamped "RPLS 5310" set in the Northwest line of said Reagan Street and being the Southeast line of said Lot 2;

THENCE South 45 degrees, 15 minutes, 00 seconds West, along the Northwest line of said Reagan Street, a distance of 25.14 feet to the PLACE OF BEGINNING and containing 3,623 square feet or 0.083 of an acre of land, more or less.

*See also* **Exhibit B and Exhibit C, below.**

**EXHIBIT B**

## PROMISSORY NOTE

*We certify this to be a true and correct copy of the original.*
*CHICAGO TITLE INSURANCE CO.*
*[signature]*
*Authorized Signature*

| | |
|---|---|
| Date: | September 25, 2008 |
| Borrower: | D. Andrew Slowe |
| Borrower's Mailing Address: | 25 Highland Park Village #100-317<br>Dallas, Texas 75205<br>Dallas County |
| Lender: | George M. Foshee, Jr. |
| Place for Payment: | 1902 S. Memorial Ct.<br>Pasadena, Texas, 77502<br>Harris County |
| | or any other place that Lender may designate in writing. |
| Principal Amount: | $250,000.00 |
| Annual Interest Rate: | Seven and One-Half Percent (7.5%) |
| Maturity Date: | September 10, 2010 |
| Annual Interest Rate on Matured, Unpaid Amounts: | Seven and One-Half Percent (7.5%) |

Terms of Payment (principal and interest):

The Principal Amount and Interest are due and payable in twenty-four (24) equal monthly installments of **One-Thousand, Five-Hundred and Sixty-Two Dollars and 50/100 ($1,562.50)**, to be paid on the tenth day of each month, beginning October 10, 2008, and continuing until the Maturity Date, at which point the remaining Principal Amount and Interest shall be due and payable. Payments will be applied first to accrued interest and the remainder to reduction of the Principal Amount.

Security for Payment:

This note is secured by a vendor's lien and superior title retained in a deed from Emmanuel Lilly and The Comfort Land Trust to Borrower dated September 25, 2008 and by a deed of trust of even date from Borrower to Kelly W. Milligan, LLC, Trustee, both of which cover the following real property:

Being part of Lot 2, Block 3/1328, of Mellersh's Oak Lawn Addition, an Addition to the City of Dallas, Dallas County, Texas, according to the map or plat thereof recorded in Volume 124, Page 13, of the Map Records of Dallas County, Texas, and being more particularly described as follows:

BEGINNING at a ½ iron pipe found in the Northwest line of Reagan Street, a 50' wide public right-of-way, at the South corner of said Lot 2, same being in the East corner of Lot 1 of said Block;

THENCE North 48 degrees, 29 minutes, 59 seconds West, a distance of 145.30 feet to a ½ inch iron rod found in the Southeast line of a 10' wide public alley right-of-way, at the West corner of said Lot 2, same being the North corner of Lot 1, from which a ½ iron pipe found for reference bears South 45 degrees, 41 minutes, 46 seconds East, a distance of 0.58 feet;

THENCE North 45 degrees, 14 minutes, 48 seconds East, along the Southeast line of said alley, as shown on 24.75 feet to a ½ inch iron rod with a yellow plastic cap stamped "RPLS 5310" set for corner;

THENCE South 46 degrees, 39 minutes, 16 seconds East, a distance of 145.30 feet to a ½ inch iron rod with a yellow plastic cap stamped "RPLS 5310" set in the Northwest line of said Reagan Street and being the Southeast line of said Lot 2;

EXHIBIT B — Page 1 of 3

**EXHIBIT B**

THENCE South 45 degrees, 15 minutes, 00 seconds West, along the Northwest line of said Reagan Street, a distance of 25.14 feet to the PLACE OF BEGINNING and containing 3,623 square feet or 0.083 of an acre of land, more or less.

Other Security for Payment:        None

Borrower promises to pay to the order of Lender the Principal Amount plus interest at the Annual Interest Rate. This note is payable at the Place for Payment and according to the Terms of Payment. All unpaid amounts are due by the Maturity Date. After maturity, Borrower promises to pay any unpaid principal balance plus interest at the Annual Interest Rate on Matured, Unpaid Amounts.

If Borrower defaults in the payment of this note or in the performance of any obligation in any instrument securing or collateral to this note, Lender may declare the unpaid principal balance, earned interest, and any other amounts owed on the note immediately due. Notwithstanding any other provision of this note, in the event of a default, before exercising any of Lender's remedies under this note or any deed of trust or warranty deed with vendor's lien securing it, Lender will first give Borrower written notice of default and Borrower will have ten days after notice is given in which to cure the default. If the default is not cured ten days after notice, Borrower and each surety, endorser, and guarantor waive all demand for payment, presentation for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, protest, and notice of protest, to the extent permitted by law.

Borrower also promises to pay reasonable attorney's fees and court and other costs if this note is placed in the hands of an attorney to collect or enforce the note. These expenses will bear interest from the date of advance at the Annual Interest Rate on Matured, Unpaid Amounts. Borrower will pay Lender these expenses and interest on demand at the Place for Payment. These expenses and interest will become part of the debt evidenced by the note and will be secured by any security for payment.

Prepayment:

Borrower may prepay this note in any amount at any time before the Maturity Date without penalty or premium.

Application of Prepayment:

Prepayments will be applied to installments on the last maturing principal, and interest on that prepaid principal will immediately cease to accrue.

Interest on the debt evidenced by this note will not exceed the maximum rate or amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be credited on the Principal Amount or, if the Principal Amount has been paid, refunded. On any acceleration or required or permitted prepayment, any excess interest will be canceled automatically as of the acceleration or prepayment or, if the excess interest has already been paid, credited on the Principal Amount or, if the Principal Amount has been paid, refunded. This provision overrides any conflicting provisions in this note and all other instruments concerning the debt.

Each Borrower is responsible for all obligations represented by this note.

When the context requires, singular nouns and pronouns include the plural.

If any installment becomes overdue for more than fifteen days, at Lender's option a late payment charge of $100.00 may be charged in order to defray the expense of handling the delinquent payment.

A default exists under this note if (1) (a) Borrower or (b) any other person liable on any part of this note or who grants a lien or security interest on property as security for any part of this note (an "Other Obligated Party") fails to timely pay or perform any obligation or covenant in any written agreement between Lender and Borrower or any Other Obligated Party; (2) any warranty, covenant, or representation in this note or in any other written agreement between Lender and Borrower or any Other Obligated Party is materially false when made; (3) a receiver is appointed for Borrower, any Other Obligated Party, or any property on which a lien or security interest is created as security (the "Collateral Security") for any part of this note; (4) any Collateral Security is assigned for the benefit of creditors; (5) a bankruptcy or insolvency proceeding is commenced by Borrower, a partnership of which Borrower is a general partner, or an Other Obligated

EXHIBIT B — Page 2 of 3

EXHIBIT B

Party; (6) (a) a bankruptcy or insolvency proceeding is commenced against Borrower, a partnership of which Borrower is a general partner, or an Other Obligated Party and (b) the proceeding continues without dismissal for sixty days, the party against whom the proceeding is commenced admits the material allegations of the petition against it, or an order for relief is entered; (7) any of the following parties is dissolved, begins to wind up its affairs, is authorized to dissolve or wind up its affairs by its governing body or persons, or any event occurs or condition exists that permits the dissolution or winding up of the affairs of any of the following parties: Borrower, a partnership of which Borrower is a general partner, or an Other Obligated Party; and (8) any Collateral Security is impaired by loss, theft, damage, levy and execution, issuance of an official writ or order of seizure, or destruction, unless it is promptly replaced with collateral security of like kind and quality or restored to its former condition.

If any provision of this note conflicts with any provision of a loan agreement, deed of trust, or security agreement of the same transaction between Lender and Borrower, the provisions of the deed of trust will govern to the extent of the conflict.

This note will be construed under the laws of the state of Texas, without regard to choice-of-law rules of any jurisdiction.

BORROWER:

_____
D. Andrew Slowe

## ACKNOWLEDGMENT

STATE OF TEXAS           §
                         §        KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF COLLIN         §

Before me, the undersigned authority, on this 25 day of September, 2008, personally appeared D. Andrew Slowe, who is: (check one) _____ known to me or __✓__ proved to me through _drivers license_ (description of identity card) to be the persons whose names are subscribed to the foregoing instrument, and acknowledged to me that said persons executed the same for the purposes and consideration therein expressed.

_____
Notary Public, State of Texas
My commission expires: _____

[Seal: RHONDA FOSTER, MY COMMISSION EXPIRES September 28, 2010]

# EXHIBIT C

**ANDY-REAGAN, GEORGE**
George No Trust

| Date | 7.5%, Matures 08/12/2010 Description | Interest or other info | Balance $250,000.00 | Accum Interest | Yearly Interest |
|---|---|---|---|---|---|
| 09/24/08 | Trans from UFB Direct MM George …7660 Andy Loan for 7.5% (wire) | $250,000.00 | $250,000.00 | | |
| 10/30/08 | Interest on $250,000 @ 7.50% | $833.33 | $250,833.33 | $833.33 | $833.33 |
| 10/30/08 | Trans to UFB Direct MM George …7660 | ($833.33) | $250,000.00 | | |
| 11/20/08 | Interest on $250,000 @ 7.50% | $1,562.50 | $251,562.50 | $2,395.83 | $2,395.83 |
| 11/20/08 | Trans to UFB Travelers Savings George …2915 | ($1,562.50) | $250,000.00 | | |
| 12/12/08 | Interest on $250,000 @ 7.50% | $1,562.50 | $251,562.50 | $3,958.33 | $3,958.33 |
| 12/12/08 | Trans to UFB Travelers Savings George …2915 | ($1,562.50) | $250,000.00 | | |
| 01/13/09 | Interest on $250,000 @ 7.50% | $1,562.50 | $251,562.50 | $5,520.83 | $1,562.50 |
| 01/13/09 | Trans to UFB Travelers Savings George …2915 | ($1,562.50) | $250,000.00 | | |
| 02/12/09 | Interest on $250,000 @ 7.50% | $1,562.50 | $251,562.50 | $7,083.33 | $3,125.00 |
| 02/12/09 | Trans to UFB Travelers Savings George …2915 | ($1,562.50) | $250,000.00 | | |
| 03/12/09 | Interest on $250,000 @ 7.50% | $1,562.50 | $251,562.50 | $8,645.83 | $4,687.50 |
| 03/12/09 | Trans to UFB Travelers Savings George …2915 | ($1,562.50) | $250,000.00 | | |
| 04/12/09 | Interest on $250,000 @ 7.50% | $1,562.50 | $251,562.50 | $10,208.33 | $6,250.00 |
| 04/12/09 | Trans to UFB Travelers Savings George …2915 | ($1,562.50) | $250,000.00 | | |
| 05/12/09 | Interest on $250,000 @ 7.50% | $1,562.50 | $251,562.50 | $11,770.83 | $7,812.50 |
| 05/12/09 | Trans to UFB Travelers Savings George …2915 | ($1,562.50) | $250,000.00 | | |
| 06/12/09 | Interest on $250,000 @ 7.50% | $1,562.50 | $251,562.50 | $13,333.33 | $9,375.00 |
| 06/12/09 | Trans to UFB Travelers Savings George …2915 | ($1,562.50) | $250,000.00 | | |
| 07/13/09 | Interest on $250,000 @ 7.50% | $1,562.50 | $251,562.50 | $14,895.83 | $10,937.50 |
| 07/13/09 | Trans to UFB Travelers Savings George …2915 | ($1,562.50) | $250,000.00 | | |
| 08/12/09 | Interest on $250,000 @ 7.50% | $1,562.50 | $251,562.50 | $16,458.33 | $12,500.00 |
| 08/12/09 | Trans to UFB Travelers Savings George …2915 | ($1,562.50) | $250,000.00 | | |
| 09/14/09 | Interest on $250,000 @ 7.50% | $1,562.50 | $251,562.50 | $18,020.83 | $14,062.50 |
| 09/14/09 | Trans to UFB Travelers Savings George …2915 | ($1,562.50) | $250,000.00 | | |
| 10/14/09 | Interest on $250,000 @ 7.50% | $1,562.50 | $251,562.50 | $19,583.33 | $15,625.00 |
| 10/14/09 | Trans to UFB Travelers Savings George …2915 | ($1,562.50) | $250,000.00 | | |
| 11/14/09 | Interest on $250,000 @ 7.50% | $1,562.50 | $251,562.50 | $21,145.83 | $17,187.50 |
| 11/14/09 | Trans to UFB Travelers Savings George …2915 | ($1,562.50) | $250,000.00 | | |
| 12/14/09 | Interest on $250,000 @ 7.50% | $1,562.50 | $251,562.50 | $22,708.33 | $18,750.00 |
| 12/14/09 | Trans to UFB Travelers Savings George …2915 | ($1,562.50) | $250,000.00 | | |
| 01/12/10 | Interest on $250,000 @ 7.50% | $1,562.50 | $251,562.50 | $24,270.83 | $1,562.50 |
| 01/12/10 | Trans to UFB Travelers Savings George …2915 | ($1,562.50) | $250,000.00 | | |
| 02/12/10 | Interest on $250,000 @ 7.50% | $1,562.50 | $251,562.50 | $25,833.33 | $3,125.00 |
| 02/12/10 | Trans to UFB Travelers Savings George …2915 | ($1,562.50) | $250,000.00 | | |
| 03/08/10 | Interest on $250,000 @ 7.50%, check #132 | $1,562.50 | $251,562.50 | $27,395.83 | $4,687.50 |
| 03/08/10 | Trans to UFB Travelers Savings George …2915 | ($1,562.50) | $250,000.00 | | |
| 04/06/10 | Interest on $250,000 @ 7.50%, check #111 | $1,562.50 | $251,562.50 | $28,958.33 | $6,250.00 |
| 04/06/10 | Trans to Bank of America MM George …9943 | ($1,562.50) | $250,000.00 | | |
| 05/06/10 | Interest on $250,000 @ 7.50%, check # | $1,562.50 | $251,562.50 | $30,520.83 | $7,812.50 |
| 05/06/10 | Trans to Bank of America MM George …9943 | ($1,562.50) | $250,000.00 | | |
| 06/14/10 | Interest on $250,000 @ 7.50%, check #169 | $1,575.00 | $251,575.00 | $32,095.83 | $9,387.50 |
| 06/14/10 | Trans to Bank of America MM George …9943 | ($1,575.00) | $250,000.00 | | |
| 07/12/10 | Interest on $250,000 @ 7.50%, check # | $1,550.00 | $251,550.00 | $33,645.83 | $10,937.50 |

EXHIBIT C — Page 1 of 2

# EXHIBIT C

**ANDY-REAGAN, GEORGE**
George No Trust

| Date | 7.5%, Matures 08/12/2010 Description | Interest or other info | Balance $250,000.00 | Accum Interest | Yearly Interest |
|---|---|---|---|---|---|
| 07/12/10 | Trans to Bank of America MM George …9943 | ($1,550.00) | $250,000.00 | | |
| 08/13/10 | Interest on $250,000 @ 7.50%, check #175 | $1,562.50 | $251,562.50 | $35,208.33 | $12,500.00 |
| 08/13/10 | Trans to Bank of America MM George …9943 | ($1,562.50) | $250,000.00 | | |
| 09/13/10 | Interest on $250,000 @ 7.50%, check #223 | $1,565.00 | $251,565.00 | $36,773.33 | $14,065.00 |
| 09/13/10 | Trans to Bank of America MM George …9943 | ($1,565.00) | $250,000.00 | | |
| 10/05/10 | Interest on $250,000 @ 7.50%, check #149 | $1,562.50 | $251,562.50 | $38,335.83 | $15,627.50 |
| 10/05/10 | Trans to Bank of America MM George …9943 | ($1,562.50) | $250,000.00 | | |
| 11/04/10 | Interest on $250,000 @ 7.50%, check #150 | $1,560.50 | $251,560.50 | $39,896.33 | $17,188.00 |
| 11/08/10 | Trans to Bank of America MM George …9943 | ($1,560.50) | $250,000.00 | | |
| 12/06/10 | Interest on $250,000 @ 7.50%, check #157 | $1,600.00 | $251,600.00 | $41,496.33 | $18,788.00 |
| 12/10/10 | Trans to Bank of America MM George …9943 | ($1,600.00) | $250,000.00 | | |
| 01/10/11 | Interest on $250,000 @ 7.50%, check #158 | $2,182.73 | $252,182.73 | $43,679.06 | $2,182.73 |
| 01/10/11 | Trans to Bank of America MM George …9943 | ($2,182.73) | $250,000.00 | | |
| 02/10/11 | Interest on $250,000 @ 7.50%, check #281 | $2,182.73 | $252,182.73 | $45,861.79 | $4,365.46 |
| 02/10/11 | Trans to Bank of America MM George …9943 | ($2,182.73) | $250,000.00 | | |
| 03/10/11 | Interest on $250,000 @ 7.50%, check #284 | $2,182.73 | $252,182.73 | $48,044.52 | $6,548.19 |
| 03/10/11 | Trans to Bank of America MM George …9943 | ($2,182.73) | $250,000.00 | | |
| 04/10/11 | Interest on $250,000 @ 7.50%, check #121 | $1,562.50 | $251,562.50 | $49,607.02 | $8,110.69 |
| 04/21/11 | Trans to Bank of America MM George …9943 | ($1,562.50) | $250,000.00 | | |

EXHIBIT C — Page 2 of 2

**EXHIBIT D**

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## DEED OF TRUST

### Terms

| | |
|---|---|
| Date: | September 25, 2008 |
| Grantor: | D. Andrew Slowe |
| Grantor's Mailing Address: | 25 Highland Park Village #100-317<br>Dallas, Dalls County, Texas 75205 |
| Trustee: | Kelly W. Milligan, LLC |
| Trustee's Mailing Address: | 5000 Legacy Drive, Suite 150<br>Plano, Collin County, Texas 75024 |
| Lender: | George M. Foshee, Jr. |
| Lender's Mailing Address: | 1902 S. Memorial Ct.<br>Pasadena, Harris County, Texas 77502 |

### Obligation

| | |
|---|---|
| Note Date: | September 25, 2008 |
| Original principal amount: | $250,000.00 |
| Borrower: | D. Andrew Slowe |
| Lender: | George M. Foshee, Jr. |
| Maturity Date: | September 10, 2010 |
| Terms of Payment: | As provided in the note. |
| Other Debt: | None. |

Property (including any improvements):

Being part of Lot 2, Block 3/1328, of Mellersh's Oak Lawn Addition, an Addition to the City of Dallas, Dallas County, Texas, according to the map or plat thereof recorded in Volume 124, Page 13, of the Map Records of Dallas County, Texas, and being more particularly described as follows:

BEGINNING at a ½ iron pipe found in the Northwest line of Reagan Street, a 50' wide public right-of-way, at the South corner of said Lot 2, same being in the East corner of Lot 1 of said Block;

THENCE North 48 degrees, 29 minutes, 59 seconds West, a distance of 145.30 feet to a ½ inch iron rod found in the Southeast line of a 10' wide public alley right-of-way, at the West corner of said Lot 2, same being the North corner of Lot 1, from which a ½ iron pipe found for reference bears South 45 degrees, 41 minutes, 46 seconds East, a distance of 0.58 feet;

THENCE North 45 degrees, 14 minutes, 48 seconds East, along the Southeast line of said alley, as shown on 24.75 feet to a ½ inch iron rod with a yellow plastic cap stamped "RPLS 5310" set for corner;

DT 20080334767
6 PGS

74/CTDee22-CT 00000208065

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## DEED OF TRUST

### Terms

| | |
|---|---|
| Date: | September 25, 2008 |
| Grantor: | D. Andrew Slowe |
| Grantor's Mailing Address: | 25 Highland Park Village #100-317<br>Dallas, Dalls County, Texas 75205 |
| Trustee: | Kelly W. Milligan, LLC |
| Trustee's Mailing Address: | 5000 Legacy Drive, Suite 150<br>Plano, Collin County, Texas 75024 |
| Lender: | George M. Foshee, Jr. |
| Lender's Mailing Address: | 1902 S. Memorial Ct.<br>Pasadena, Harris County, Texas 77502 |

### Obligation

| | |
|---|---|
| Note Date: | September 25, 2008 |
| Original principal amount: | $250,000.00 |
| Borrower: | D. Andrew Slowe |
| Lender: | George M. Foshee, Jr. |
| Maturity Date: | September 10, 2010 |
| Terms of Payment: | As provided in the note. |
| Other Debt: | None. |

Property (including any improvements):

Being part of Lot 2, Block 3/1328, of Mellersh's Oak Lawn Addition, an Addition to the City of Dallas, Dallas County, Texas, according to the map or plat thereof recorded in Volume 124, Page 13, of the Map Records of Dallas County, Texas, and being more particularly described as follows:

BEGINNING at a ½ iron pipe found in the Northwest line of Reagan Street, a 50' wide public right-of-way, at the South corner of said Lot 2, same being in the East corner of Lot 1 of said Block;

THENCE North 48 degrees, 29 minutes, 59 seconds West, a distance of 145.30 feet to a ½ inch iron rod found in the Southeast line of a 10' wide public alley right-of-way, at the West corner of said Lot 2, same being the North corner of Lot 1, from which a ½ iron pipe found for reference bears South 45 degrees. 41 minutes, 46 seconds East, a distance of 0.58 feet;

THENCE North 45 degrees, 14 minutes, 48 seconds East, along the Southeast line of said alley, as shown on 24.75 feet to a ½ inch iron rod with a yellow plastic cap stamped "RPLS 5310" set for corner;

# EXHIBIT D

THENCE South 46 degrees, 39 minutes, 16 seconds East, a distance of 145.30 feet to a ½ inch iron rod with a yellow plastic cap stamped "RPLS 5310" set in the Northwest line of said Reagan Street and being the Southeast line of said Lot 2;

THENCE South 45 degrees, 15 minutes, 00 seconds West, along the Northwest line of said Reagan Street, a distance of 25.14 feet to the PLACE OF BEGINNING and containing 3,623 square feet or 0.083 of an acre of land, more or less.

Prior Lien: None.

Other Exceptions to
Conveyance and Warranty: None.

For value received and to secure payment of the Obligation, Grantors convey the Property to Trustee in trust. Grantors warrant and agree to defend the title to the Property, subject to the Other Exceptions to Conveyance and Warranty. On payment of the Obligation and all other amounts secured by this deed of trust, this deed of trust will have no further effect, and Lender will release it at Grantors' expense.

## Clauses and Covenants

A. Grantors' Obligations:

Grantors agree to-

1. keep the Property in good repair and condition;

2. pay all taxes and assessments on the Property before delinquency;

3. defend title to the Property subject to the Other Exceptions to Conveyance and Warranty and preserve the lien's priority as it is established in this deed of trust;

4. maintain all insurance coverages with respect to the Property, revenues generated by the Property, and operations on the Property that Lender reasonably requires ("Required Insurance Coverages"), issued by insurers and written on policy forms acceptable to Lender, and deliver evidence of the Required Insurance Coverages in a form acceptable to Lender at least ten days before the expiration of the Required Insurance Coverages;

5. obey all laws, ordinances, and restrictive covenants applicable to the Property;

6. keep any buildings occupied as required by the Required Insurance Coverages;

7. if the lien of this deed of trust is not a first lien, pay or cause to be paid all prior lien notes and abide by or cause to be abided by all prior lien instruments; and

8. notify Lender of any change of address.

B. Lender's Rights

1. Lender or Lender's mortgage servicer may appoint in writing a substitute trustee, succeeding to all rights and responsibilities of Trustee.

2. If the proceeds of the Obligation are used to pay any debt secured by prior liens, Lender is subrogated to all the rights and liens of the holders of any debt so paid.

3. Lender may apply any proceeds received under the property insurance policies covering the Property either to reduce the Obligation or to repair or replace damaged or destroyed improvements covered by the policy. If the Property is Grantors' primary residence and Lender reasonably determines that repairs to the improvements are economically feasible, Lender will make the property insurance proceeds available to Grantors for repairs.

**EXHIBIT D**

4. Notwithstanding the terms of the Note to the contrary, and unless applicable law prohibits, all payments received by Lender from Grantors with respect to the Obligation or this deed of trust may, at Lender's discretion, be applied first to amounts payable under this deed of trust and then to amounts due and payable to Lender with respect to the Obligation, to be applied to late charges, principal, or interest in the order Lender in its discretion determines.

5. If Grantors fail to perform any of Grantors' obligations, Lender may perform those obligations and be reimbursed by Grantors on demand for any amounts so paid, including attorney's fees, plus interest on those amounts from the dates of payment at the rate stated in the Note for matured, unpaid amounts. The amount to be reimbursed will be secured by this deed of trust.

6. If there is a default on the Obligation or if Grantors fail to perform any of Grantors' obligations and the default continues after any required notice of the default and the time allowed to cure, Lender may-

    a.) declare the unpaid principal balance and earned interest on the Obligation immediately due;

    b.) direct Trustee to foreclose this lien, in which case Lender or Lender's agent will cause notice of the foreclosure sale to be given as provided by the Texas Property Code as then in effect; and

    c.) purchase the Property at any foreclosure sale by offering the highest bid and then have the bid credited on the Obligation.

7. Lender may remedy any default without waiving it and may waive any default without waiving any prior or subsequent default.

    C. **Trustee's Rights and Duties**

If directed by Lender to foreclose this lien, Trustee will-

1. either personally or by agent give notice of the foreclosure sale as required by the Texas Property Code as then in effect;

2. sell and convey all or part of the Property "AS IS" to the highest bidder for cash with a general warranty binding Grantors, subject to the Prior Lien and to the Other Exceptions to Conveyance and Warranty and without representation or warranty, express or implied, by Trustee;

3. from the proceeds of the sale, pay, in this order-

    a.) expenses of foreclosure, including a reasonable commission to Trustee;

    b.) to Lender, the full amount of principal, interest, attorney's fees, and other charges due and unpaid;

    c.) any amounts required by law to be paid before payment to Grantors; and

    d.) to Grantors, any balance; and

4. be indemnified, held harmless, and defended by Lender against all costs, expenses, and liabilities incurred by Trustee for acting in the execution or enforcement of the trust created by this deed of trust, which includes all court and other costs, including attorney's fees, incurred by Trustee in defense of any action or proceeding taken against Trustee in that capacity.

    D. **General Provisions**

1. If any of the Property is sold under this deed of trust, Grantors must immediately surrender possession to the purchaser. If Grantors fail to do so, Grantors will become a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

2. Recitals in any trustee's deed conveying the Property will be presumed to be true.

3. Proceeding under this deed of trust, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

**EXHIBIT D**

4.　This lien will remain superior to liens later created even if the time of payment of all or part of the Obligation is extended or part of the Property is released.

5.　If any portion of the Obligation cannot be lawfully secured by this deed of trust, payments will be applied first to discharge that portion.

6.　Grantors assign to Lender all amounts payable to or received by Grantors from condemnation of all or part of the Property, from private sale in lieu of condemnation, and from damages caused by public works or construction on or near the Property. After deducting any expenses incurred, including attorney's fees and court and other costs, Lender will either release any remaining amounts to Grantors or apply such amounts to reduce the Obligation. Lender will not be liable for failure to collect or to exercise diligence in collecting any such amounts. Grantors will immediately give Lender notice of any actual or threatened proceedings for condemnation of all or part of the Property.

7.　Grantors assign to Lender absolutely, not only as collateral, all present and future rent and other income and receipts from the Property. Grantors warrant the validity and enforceability of the assignment. Grantors may as Lender's licensee collect rent and other income and receipts as long as Grantors are not in default with respect to the Obligation or this deed of trust. Grantors will apply all rent and other income and receipts to payment of the Obligation and performance of this deed of trust, but if the rent and other income and receipts exceed the amount due with respect to the Obligation and deed of trust, Grantors may retain the excess. If Grantors default in payment of the Obligation or performance of this deed of trust, Lender may terminate Grantors' license to collect rent and other income and then as Grantors' agent may rent the Property and collect all rent and other income and receipts. Lender neither has nor assumes any obligations as lessor or landlord with respect to any occupant of the Property. Lender may exercise Lender's rights and remedies under this paragraph without taking possession of the Property. Lender will apply all rent and other income and receipts collected under this paragraph first to expenses incurred in exercising Lender's rights and remedies and then to Grantors' obligations with respect to the Obligation and this deed of trust in the order determined by Lender. Lender is not required to act under this paragraph, and acting under this paragraph does not waive any of Lender's other rights or remedies. If Grantors become a voluntary or involuntary debtor in bankruptcy, Lender's filing a proof of claim in bankruptcy will be deemed equivalent to the appointment of a receiver under Texas law.

8.　Interest on the debt secured by this deed of trust will not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess will be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides any conflicting provisions in this and all other instruments concerning the debt.

9.　In no event may this deed of trust secure payment of any debt that may not lawfully be secured by a lien on real estate or create a lien otherwise prohibited by law.

10.　When the context requires, singular nouns and pronouns include the plural.

11.　The term *Note* includes all extensions, modifications, and renewals of the Note and all amounts secured by this deed of trust.

12.　Grantors agree to make an initial deposit in a reasonable amount to be determined by Lender and then make monthly payments to a fund for taxes and insurance premiums on the Property. Monthly payments will be made on the payment dates specified in the Note, and each payment will be one-twelfth of the amount that Lender estimates will be required annually for payment of taxes and insurance premiums. The fund will accrue no interest, and Lender will hold it without bond in escrow and use it to pay the taxes and insurance premiums. If Grantors have complied with the requirements of this paragraph, Lender must pay taxes before delinquency. Grantors agree to make additional deposits on demand if the fund is ever insufficient for its purpose. If an excess accumulates in the fund, Lender may either credit it to future monthly deposits until the excess is exhausted or refund it to Grantors. When Grantors make the final payment on the Note, Lender will credit to that payment the whole amount then in the fund or, at Lender's option, refund it after the Note is paid. If this deed of trust is foreclosed, any balance in the fund over that needed to pay taxes, including taxes accruing but not yet payable, and to pay insurance premiums will be paid under part C, "Trustee's Rights and Duties." If the Property is transferred, any balance then in the fund will still be subject to the provisions of this paragraph and will inure to the benefit of the transferee. Deposits to the fund described in this paragraph are in addition to the monthly payments provided for in the Note.

13. If the Property is transferred by foreclosure, the transferee will acquire title to all insurance policies on the Property, including all paid but unearned premiums.

14. GRANTORS MAY FURNISH ANY INSURANCE REQUIRED BY THIS DEED OF TRUST EITHER THROUGH EXISTING POLICIES OWNED OR CONTROLLED BY GRANTORS OR THROUGH EQUIVALENT COVERAGE FROM ANY INSURANCE COMPANY AUTHORIZED TO TRANSACT BUSINESS IN TEXAS.

15. If Grantors transfer any part of the Property without Lender's prior written consent, Lender may, at her sole discretion, declare the Obligation immediately payable and invoke any remedies provided in this deed of trust for default. If the Property is residential real property containing fewer than five dwelling units or a residential manufactured home, this provision does not apply to (a) a subordinate lien or encumbrance that does not transfer rights of occupancy of the Property; (b) creation of a purchase-money security interest for household appliances; (c) transfer by devise, descent, or operation of law on the death of a co-Grantor; (d) grant of a leasehold interest of three years or less without an option to purchase; (e) transfer to a spouse or children of Grantors or between co-Grantors; (f) transfer to a relative of Grantors on Grantors' death; (g) a transfer resulting from a decree of a dissolution of marriage, a legal separation agreement, or an incidental property settlement agreement by which the spouse of Grantor becomes an owner of the Property; or (h) transfer to an inter vivos trust in which Grantors are and remain beneficiaries and occupants of the Property.

16. This deed of trust binds, benefits, and may be enforced by the successors in interest of all parties.

17. If Grantors and Borrowers are not the same person, the term *Grantors* includes Borrowers.

18. Grantors and each surety, endorser, and guarantor of the Obligation waive all demand for payment, presentation for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, protest, and notice of protest, to the extent permitted by law.

19. Grantors agree to pay reasonable attorney's fees, trustee's fees, and court and other costs of enforcing Lender's rights under this deed of trust if this deed of trust is placed in the hands of an attorney for enforcement.

20. If any provision of this deed of trust is determined to be invalid or unenforceable, the validity or enforceability of any other provision will not be affected.

21. The term *Lender* includes any mortgage servicer for Lender.

22. Grantors represent that this deed of trust and the Note are given for the following purposes:

The debt evidenced by the Note is in payment of the purchase price of the Property; the debt is secured both by this deed of trust and by a vendor's lien on the Property, which is expressly retained in a deed to Grantors of even date. This deed of trust does not waive the vendor's lien, and the two liens and the rights created by this deed of trust are cumulative. Lender may elect to foreclose either of the liens without waiving the other or may foreclose both.

GRANTOR:

*D Andrew Slowe*

D. Andrew Slowe

**EXHIBIT D**

## ACKNOWLEDGMENT

STATE OF TEXAS §
§ KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF DALLAS §

Before me, the undersigned authority, on this __25__ day of September, 2008, personally appeared D. Andrew Slowe, who is: (check one) ____ known to me or __✓__ proved to me through __drivers license__ (description of identity card) to be the persons whose names are subscribed to the foregoing instrument, and acknowledged to me that said persons executed the same for the purposes and consideration therein expressed.

RHONDA FOSTER
MY COMMISSION EXPIRES
September 28, 2010

_Rhonda Foster_
Notary Public, State of Texas
My commission expires:

PREPARED IN THE OFFICE OF:

Kelly W. Milligan, LLC
5000 Legacy Drive, Suite 150
Plano, Texas 75024

✓ AFTER RECORDING RETURN TO:

Kelly W. Milligan, LLC
5000 Legacy Drive, Suite 150
Plano, Texas 75024

**FILED AND RECORDED**
OFFICIAL PUBLIC RECORDS

John F. Warren, County Clerk
Dallas County TEXAS
October 17, 2008 09:55:27 AM
FEE: $36.00      20080334767

EXHIBIT D — Page 7 of 7

# EXHIBIT E

DCAD: Residential Acct Detail          http://www.dallascad.org/AcctDetailRes.aspx?ID=00000149164000000



Home | Find Property | Contact Us

## Residential Account #00000149164000000

Location   Owner   Legal Desc   Value   Main Improvement   Additional Improvements   Land   Exemptions
Estimated Taxes   History

### Property Location

**Address:** 2909 REAGAN ST
**Neighborhood:** 1DSJ20
**Mapsco:** 35-W (DALLAS)

**DCAD Property Map**

**2011 Current Appraisal Notice**

**uFile Online Protest**

**File Homestead Exemption Online**

 **Print Homestead Exemption Form**

 **Print/Mail Account Protest Form**

YAHOO! Maps

### Owner

SLOWE D ANDREW
STE 100-317
25 HIGHLAND PARK VILLAGE
DALLAS, TEXAS 752052789

### Multi-Owner

Not Applicable (N/A)

### Legal Desc

1: MELLERSH OAK LAWN
2: BLK 3/1328 SW PT LT 2
3: ACS 0.083
4: INT20080334766 DD09252008 CO-DC
5: 1328 003 00200 1DA1328 003
**Deed Transfer Date:** 10/17/2008

### Value

| 2011 Proposed Values | |
|---|---|
| Improvement: | $207,700 |
| Land: | + $72,300 |
| Market Value: | =$280,000 |
| **Revaluation Year:** | 2009 |
| **Previous Revaluation Year:** | 2011 |

1 of 3                                                                                                5/3/2011 7:17 PM

**EXHIBIT E**

DCAD: Residential Acct Detail    http://www.dallascad.org/AcctDetailRes.aspx?ID=00000149164000000

## Main Improvement

| | | | | | |
|---|---|---|---|---|---|
| Building Class | 16 | Construction Type | FRAME | # Baths (Full/Half) | 3/ 0 |
| Year Built | 2006 | Foundation | SLAB | # Kitchens | 1 |
| Effective Year Built | 2006 | Roof Type | FLAT | # Bedrooms | 3 |
| Actual Age | 5 years | Roof Material | COMP SHINGLES | # Wet Bars | 0 |
| CDU (Condition / Desirability / Utility) | EXCELLENT | Fence Type | WOOD | # Fireplaces | 1 |
| Living Area | 2,294 sqft | Ext. Wall Material | FRAME, STUCCO | Sprinkler (Y/N) | Y |
| Total Area | 2,294 sqft | Basement | NONE | Deck (Y/N) | N |
| % Complete | 100% | Heating | CENTRAL FULL | Spa (Y/N) | N |
| # Stories | TWO STORIES | Air Condition | CENTRAL FULL | Pool (Y/N) | N |
| Depreciation | 0% | | | Sauna (Y/N) | N |

## Additional Improvements

| # | Improvement Type | Construction | Floor | Exterior Wall | Area (sqft) |
|---|---|---|---|---|---|
| 1 | ATTACHED GARAGE | FR-FRAME | CONCRETE | UNASSIGNED | 400 |

## Land

| # | State Code | Zoning | Frontage (ft) | Depth (ft) | Area | Pricing Method | Unit Price | Market Adjustment | Adjusted Price | Ag Land |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | MFR - DUPLEXES | MULTIFAMILY DISTRICT 2 | 25 | 145 | 3,615.0000 SQUARE FEET | STANDARD | $20.00 | 0% | $72,300 | N |

## Exemptions
No Exemptions

## Estimated Taxes

| | City | School | County and School Equalization | College | Hospital | Special District |
|---|---|---|---|---|---|---|
| Taxing Jurisdiction | DALLAS | DALLAS ISD | DALLAS COUNTY | DALLAS CO COMMUNITY COLLEGE | PARKLAND HOSPITAL | UNASSIGNED |
| Tax Rate per $100 | $0.797 | $1.237811 | $0.2531 | $0.09923 | $0.271 | N/A |
| Taxable Value | $280,000 | $280,000 | $280,000 | $280,000 | $280,000 | $0 |
| Estimated Taxes | $2,231.60 | $3,465.87 | $708.68 | $277.84 | $758.80 | N/A |
| Tax Ceiling | | | | | N/A | N/A |
| | | | | | **Total Estimated Taxes:** | **$7,442.79** |

**DO NOT PAY TAXES BASED ON THESE ESTIMATED TAXES.** You will receive an **official tax bill** from the appropriate agency when they are prepared. Taxes are collected by the agency sending you the **official** tax bill. To see a listing of agencies that collect taxes for your property. **Click Here**

The estimated taxes are provided as a courtesy and should not be relied upon in making financial or other decisions. The Dallas Central Appraisal District (DCAD) does not control the tax rate nor the amount of the taxes, as that is the responsibility of each Taxing Jurisdiction. Questions about your taxes should be directed to the appropriate taxing jurisdiction. We cannot assist you in these matters. These tax estimates are calculated by using the most current certified taxable value multiplied by the most current tax rate. **It does not take into account other special or unique tax scenarios.** If you wish to calculate taxes yourself, you may use the TaxEstimator to assist you.

## History
**History**

© 2011 Dallas Central Appraisal District.
All Rights Reserved.

**EXHIBIT E— Page 2 of 2**